IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACQLYN HOWLAND,** *et al.* | : | CIVIL ACTION |
| *Plaintiffs* | : | |
| | : | NO. 22-2686 |
| **v.** | : | |
| | : | |
| **THE CINCINNATI INSURANCE COMPANY** | : | |
| | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 NOVEMBER 20, 2023

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiffs Jacqlyn and Chris Howland (collectively, "Plaintiffs") commenced this action by filing a complaint in the Court of Common Pleas for Bucks County, Pennsylvania, asserting claims for breach of contract (Count I), bad faith (Count II), and declaratory judgment (Count III), against their insurer, The Cincinnati Insurance Company ("Defendant"). Plaintiffs allege that Defendant breached the homeowner's insurance policy that it had issued to Plaintiffs and engaged in bad faith when failing to provide coverage under the Additional Coverages section of the policy. Defendant removed the action to this Court based on diversity jurisdiction. [ECF 1].

Presently, before this Court are Plaintiffs' motion for partial summary judgment, [ECF 9], and Defendant's motion for summary judgment, [ECF 10], both filed pursuant to Federal Rule of Civil Procedure ("Rule") 56. The motions are opposed.[1] The issues presented in the respective motions are fully briefed and are ripe for disposition. For the reasons set forth herein, Plaintiffs'

---

[1] Defendant filed a response in opposition to Plaintiffs' motion for partial summary judgment. [ECF 12]. Plaintiffs filed a response in opposition to Defendant's motion for summary judgment, [ECF 11], to which Defendant replied, [ECF 15].

1

partial motion for summary judgment is granted, and Defendant's motion for summary judgment is granted, *in part*.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to the underlying motions are summarized as follows:[2]

> Defendant issued the Cincinnati Executive Capstone Homeowner Policy (the "Policy") to Plaintiffs with an effective policy period of October 8, 2019, to October 8, 2020. The Policy was renewed for an additional year to October 8, 2021. The Policy provides coverage for Plaintiffs' primary residence located in Newtown, Pennsylvania.
>
> On September 17, 2021, Plaintiffs submitted a claim under the Policy for wind and water damage sustained on September 1, 2021, caused by Hurricane Ida. Defendant inspected the property and identified water damage to the playroom, basement, and living room areas. Pursuant to the Policy, Defendant paid Plaintiffs for the cost of repairing the interior damage.
>
> Plaintiffs hired ServPro, a contractor, to inspect property. During its inspection, ServPro discovered mold and wet rot in the sheathing of the exterior walls of the property. Defendant agreed that mold and wet rot were present and, pursuant to Section I (A)(5)(m) Additional Coverages – Fungi,[3] Wet or Dry Rot, or Bacteria (the "Mold Additional Coverage") of the Policy, issued payment in the full amount, the $10,000 mold coverage limit.[4]

---

[2] These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any facts are disputed, such disputes will be noted and, if material, will be construed in the non-movant's favor pursuant to Rule 56. Though Plaintiffs and Defendant are both movants and non-movants with respect to Plaintiffs' claim for declaratory judgment (Count III), the cross-motions raise legal, rather than factual, arguments with respect to the interpretation of the underlying insurance policy.

[3] The Policy defines "fungi" to include mold.

[4] The Policy is an occurrence policy that only covers loss "that occurs during the 'coverage term.'" (Policy, Section I (A)(1)). Thus, by issuing the $10,000 payment under the Mold Additional Coverage provision, Defendant conceded that the mold damage occurred during the coverage period, October 8, 2019, to October 8, 2021.

To remediate the mold in the exterior wall, Plaintiffs retained consultant Michael J. Costigan of MJ Costigan Builders LLC ("Costigan"). After his inspection, Costigan wrote in a letter dated May 11, 2022, indicating:

> The existing full stone veneer at the front of the home was installed and mortared tight to the exterior sheathing. No air pocket between the back of stone and face of exterior wall is present to allow moisture entering through the mortar to escape. Along with the lack of this air pocket, there are no drains or weep holes along the bottom of the stone at the ledge upon which the stone rests. In several areas where the drywall was removed, there is no sheathing present at all. It has completely rotted away.
>
> *While remediating the damage to the home, we must comply with the current IRC Code utilized by your township. That code requires the installation of an air gap between the stone and face exterior wall, weep holes and drainage. Compliance with the Code for any part of the wall will require the complete removal and replacement of the entire exterior wall.*

(Pls'. Mot., Ex. C, ECF 9-4) (emphasis added). Costigan estimated that the remediation cost would be $93,136.

At the time of the repairs, Newtown Township, where Plaintiffs' residence is located, enforced the 2018 International Residential Code (IRC). As identified by Costigan, IRC R703.8 (the "Local Building Code") requires a one-inch air gap between the stone and exterior wall. Plaintiffs' property was constructed in 1991, when the Local Building Code did not include the now required air gap.

On May 13, 2022, Plaintiffs contacted Defendant seeking coverage for the costs associated with bringing the property's exterior wall up to code pursuant to Section I (A)(5)(k) Additional Coverages – Ordinance or Law (the "Ordinance Additional Coverage") of the Policy.[5] By letter dated May 27, 2022, Defendant denied the requested additional coverage on the basis that the damage was related to the mold and, therefore, the recovery under the Policy was limited by the $10,000 mold limit.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs the summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate

---

[5]  Relevant portions of the Policy are provided where discussed below.

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Generally, Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id*. at 322.  After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A-B).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Insurance Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings.  *Celotex*, 477 U.S. at 324.  Rather, the nonmoving party must "go beyond the

pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

The standards to be applied in deciding cross-motions for summary judgment are the same as those applied when only one party has filed a summary judgment motion. *Cincinnati Ins. Co. v. Devon Int'l, Inc.,* 924 F. Supp. 2d 587, 589 n.3 (E.D. Pa. 2013). "When confronted with cross-motions for summary judgment, the 'court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 635 (E.D. Pa. 2016) (quotations omitted).

**DISCUSSION**

As noted, Plaintiffs and Defendant move for summary judgment. Specifically, Defendant moves for summary judgment on all three counts of the complaint, breach of contract (Count I), bad faith (Count II), and declaratory judgment (Count III), while Plaintiffs move for summary judgment *only* on Count III. Since both parties move for summary judgment with respect to Count III, this Court will begin its analysis with this count.

### *Count III – Declaratory Judgment*

At Count III, Plaintiffs seek a declaration that the work necessary to replace the house's exterior wall ,for compliance with the Local Building Code, is covered by the *Ordinance Additional Coverage* provision and is not subject to the $10,000 limit in the *Mold Additional Coverage*. Defendant, on the other hand, seeks a declaration that the damage for which Plaintiffs seek coverage is subject to the Mold Additional Coverage's $10,000 limit and the Policy's exclusions and, therefore, it is no responsible for the costs involved in the repairs. Because the

cross-motions for summary judgment concern identical issues and there are no disputes of material fact, this Court will address both motions concurrently.[6]

The Declaratory Judgment Act permits any court of the United States to declare the rights and other legal relations of any interested party seeking such a declaration in a case of actual controversy within its jurisdiction. 28 U.S.C. § 2201. Any such declaration shall have the force and effect of a final judgment or decree. *Id.* "A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage." *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997) (citing *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808 (3d Cir.1994)).

Here, the parties' dispute centers on a disagreement as to the interpretation and application of the *Ordinance Additional Coverage* and the *Mold Additional Coverage* provisions of the Policy. In *American Automobile Insurance Co. v. Murray*, 658 F.3d 311 (3d Cir. 2011), the United States Court of Appeals for the Third Circuit outlined the approach that Pennsylvania district courts should take when reviewing insurance contract provisions and exclusions as follows:

> It is the function of the court to interpret insurance contracts under Pennsylvania law. The court's primary consideration in performing this function is to ascertain the intent of the parties as manifested by the language of the written instrument. The policy must be read as a whole and construed in accordance with the plain meaning of terms. Words of common usage must be construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms. Where the language of an insurance policy is clear and unambiguous, a court must enforce that language. Furthermore, if possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions. However, if the contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous. Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured,

---

[6] In their cross-motions as to Count III, Plaintiffs and Defendant each seek a declaration of the Policy's interpretation and advance only legal arguments rather than factual arguments.

> therefore, must control. Pennsylvania courts have applied this rule liberally.

*Id.* at 320-21 (citations and quotations omitted); *see also Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290-91 (Pa. 2007); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).

In essence, the parties disagree whether the Additional Mold Coverage's $10,000 limitation applies to any additional property loss, including losses falling within the Ordinance Additional Coverage provision if the loss is or can be related to mold. As noted, while inspecting the water and wind damage to their home, Plaintiffs' contractor discovered mold. Plaintiffs submitted a claim to Defendant for the cost of remediating the mold, under the Policy's Mold Additional Coverage provision, which provides:

> (1) The amount shown in the Section I - Fungi, Wet or Dry Rot, or Bacteria - Limit of Insurance Schedule is the most "we" will pay at each "location" under this Additional Coverage during the "coverage term" for:
>
> > (a) The total of all "physical loss" payable under Section I - Property Coverages caused by "fungi", wet or dry rot, or bacteria;
> >
> > (b) The cost to remove "fungi", wet or dry rot, or bacteria from Covered Property under Section I - Property Coverages;
> >
> > (c) The cost to tear out and replace any part of the building or other Covered Property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and
> >
> > (d) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that

> there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria . . .
>
> (4) If there is covered "physical loss" to Covered Property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, payment for "physical loss" will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the "physical loss". Any such increase in the "physical loss" will be subject to the terms of this Additional Coverage.

(Policy, ECF 9-2, at Section I (A)(5)(m)). The Mold Additional Coverage limits the maximum coverage under the section to $10,000 for mold related damages. (*See* Policy, Limit of Insurance Schedule, ECF 9-2, at p. 60). Here, Defendant approved the claim and paid Plaintiffs $10,000 for the mold remediation needed pursuant to the Mold Additional Coverage.

During the inspection and remediation of the mold, Plaintiffs' contractor discovered that additional repairs were needed to comply with the Local Building Code. As identified by Plaintiffs' contractor, the Local Building Code requires a one-inch air gap between the stone and exterior wall, which the exterior wall did not have. Plaintiffs submitted an additional claim under the Policy's Ordinance Additional Coverage for the costs associated with repairing and replacing the entire exterior wall, as required by the Local Building Code. The Policy's Ordinance Additional Coverage provision provides:

> After a covered loss, "we" will pay for the increased costs "you" incur caused by the enforcement of any ordinance or law which requires or regulates . . .
>
> (a) The construction, demolition, remodeling, renovation or repair of the damaged part of a covered building or other structure made necessary by a Covered Cause of Loss;
>
> (b) The remodeling, replacement or removal of the portion of the undamaged part of covered building or other structure necessary to complete the remodeling, replacement or

> removal of that part of the building or other structure damaged by a Covered Cause of Loss . . . .

(Policy, ECF 9-2, at Section I (A)(5)(k)).

Defendant denied Plaintiffs' request for coverage of the additional exterior wall repairs on the basis that the additional repairs were subject to the Mold Additional Coverage's $10,000 limit, which Defendant had paid in full. Defendant insists that because the additional repairs "stem[] directly from the work necessary to remediate the mold," coverage for these additional repairs falls solely within the Mold Additional Coverage provision and are, thus, subject to said provision's $10,000 limit. (Def.'s Mot., ECF 10-1, p.8).

Plaintiffs disagree and argue that the Mold Additional Coverage provision and its concomitant $10,000 limit applies only to losses "caused" by mold. Further, Plaintiffs argue that the additional repairs needed to replace the entire exterior wall were not "caused" by the mold, but rather were "caused" or resulted from the need to ensure that the remediation done complied with the code. Such repairs, Plaintiffs argue, are separately covered under the Ordnance Additional Coverage, which is not subject to the $10,000 mold limit.

To resolve the parties' dispute, this Court must determine the scope of the Mold Additional Coverage. This scope is found in Paragraph four of the Mold Additional Coverage, which provides:

> If there is covered "physical loss" to Covered Property, **not caused, in whole or in part**, by "fungi", wet or dry rot, or bacteria, payment for "physical loss" **will not be limited by the terms of this Additional Coverage**, except to the extent that "fungi", wet or dry rot, or bacteria **causes** an increase in the "physical loss". Any such increase in the "physical loss" will be subject to the terms of this Additional Coverage.

(Policy, ECF 9-2, at Section I (A)(5)(m)(4)) (emphasis added).  Though written in the negative, this provision clearly limits the scope of the Mold Additional Coverage to losses "caused" "in whole or in part, by 'fungi.'"  Common dictionary definitions define the word "cause" as:

- "to serve as a cause or occasion of."  *Merriam-Webster Dictionary*;
- "to bring about; to bring into existence; to make."  *Black's Law Dictionary*;
- "to effect, bring about, produce, induce, make."  *Oxford English Dictionary*;
- "to make it happen."  *Collins Dictionary*;
- "to bring into existence."  *Webster's Third New International Dictionary*; and
- "to make something happen, especially something bad."  *Cambridge Dictionary*.

Under these dictionary definitions and common usages of the word "cause," the physical loss incurred because of the need to replace the exterior wall to comply with the current Local Building Code, was not "caused" by the mold but rather because of code requirements that the exterior walls have air gaps.  Notably, Plaintiffs' residence was built in 1991.  When the residence was originally constructed, the air gap requirement now required by the current Local Building Code was not in effect.  As such, the lack of the air gap in Plaintiffs' exterior wall preexisted any damage related to Hurricane Ida and the mold damage.  Thus, the mold did not "bring into existence," "produce," or "make" the exterior wall non-complaint with the Local Building Code.  That is, the additional exterior wall repairs were "**not caused, in whole or in part,** by 'fungi', wet or dry rot, or bacteria, [and] payment for [the] 'physical loss' [is] not [] limited by the terms of this Additional Coverage," (Policy, ECF 9-2, at Section I (A)(5)(m)(4)) (emphasis added), but rather were necessary to be in compliance with the current Local Building Code.  Accordingly, the additional costs for the replacement of the exterior wall are not limited by the $10,000 mold limit.

Further, the Ordinance Additional Coverage provision expressly provides that "[a]fter a covered loss, [the insurer] will pay for the ***increased costs*** [the insured] incur ***caused by the enforcement of any ordinance or law***."  (Policy, ECF 9-2, at Section I (A)(5)(k)) (emphasis added).  Again, using the ordinary meaning of the word "caused," Plaintiffs had a covered loss

(the mold damage) and the additional coverage payment they seek is because the Local Building Code, a local ordinance, "brought into existence" or "made" the increased cost of the necessary repairs. The additional cost of the work needed to repair/replace the exterior walls of their residence and fully comply with the Local Building Code are covered by the Ordinance Additional Coverage. As such, these repair expenses are not subject to the $10,000 mold limit.

In their motion, Defendant also raises two Policy exclusions as affirmative defenses; specifically, Section I (C)(4)(j) – Fungi, wet or dry rot, or bacteria Exclusion (the "Mold Exclusion") and Section I (C)(1)(f) – Faulty, inadequate, or defective work Exclusion (the "Faulty Workmanship Exclusion"). In response, Plaintiffs argues that neither of these exclusions apply to the Additional Coverages, the provision under which Plaintiffs seek coverage.

Where an insurer denies coverage based on a policy exclusion, "the insurer bears the burden of proving the applicability of the exclusion as an affirmative defense." *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 158 (3d Cir. 2017). "Exclusions in an insurance policy 'are strictly construed against the insurer.'" *Nautilus Ins. Co. v. Bike & Build, Inc.*, 340 F. Supp. 3d 399, 409 (E.D. Pa. 2018) (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998)).

Here, the Policy provides five categories of coverage: (1) Coverage A – Dwelling, (2) Coverage B – Other Structures, (3) Coverage C – Personal Property, (4) Coverage D – Loss of Use, and (5) Additional Coverages.[7] All of the policy exclusions, including those raised by

---

[7] To interpret the Policy, this Court looks at the Policy as a whole, including its structure. *See Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 503 F. Supp. 3d 251, 256 (E.D. Pa. 2020), *aff'd sub nom. Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131 (3d Cir. 2023) (looking to the policy's overall structure and headings to interpret the plain meaning of the policy and the extent to which an exclusion applies to other sections of the policy); *Susan Spath Hegedus, Inc. v. ACE Fire Underwriters Ins. Co.*, 538 F. Supp. 3d 457, 462-64 (E.D. Pa. 2021) (same); *Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*, 2021 WL 1061849, at *7 (W.D. Pa. Mar. 18, 2021) (evaluating the applicability of an exclusion with the structure of the insurance policy).

Defendant, are enumerated in Section I (C) – Exclusions (the "Exclusions Provision") of the Policy.  The Exclusions Provision expressly provides that "the following exclusions apply to **Coverage A** – Dwelling, **Coverage B** – Other Structures and **Coverage C** – Personal property." (Policy, Section I (C)) (emphasis added).  Notably, neither **Coverage D** nor **Additional Coverages** are included in the Exclusions Provision.  Plaintiffs seek coverage under the Ordinance Additional Coverage which is contained in the Additional Coverages.  Therefore, by the expressed terms of the Policy, the Exclusions Provision does not apply to the Additional Coverages.[8]

Despite the omission of the Additional Coverages provision in the Exclusions Provision, Defendant, nonetheless, argues that the exclusions apply to the Ordinance Additional Coverage because the "covered cause of loss" referenced in the Ordinance Additional Coverage provision does not include excluded losses.  Defendant's argument is unpersuasive.  The "Covered Causes of Loss" section of the Policy defines a "covered cause of loss" as a "'physical loss' unless the 'physical loss' is excluded" by the exclusions in the Exclusions Provision.  (Policy, ECF 9-2, at Section I (B)).  As set forth above, the Exclusions Provision does not apply to the Additional Coverages, as evidenced by the plain and express language of the Exclusions Provision itself, which conspicuously omits the Additional Coverages.

Defendant also argues that the coverage Plaintiffs seek under the Ordinance Additional Coverage is excluded by the Faulty Workmanship Exclusion.  This exclusion provides:

> "We" do not insure "physical loss" caused by . . .
>
> f. Faulty, inadequate or defective:

---

The Policy's structure is most apparent in the Policy's Table of Contents, where Coverages A, B, C, D, and Additional Coverages are all listed at the same heading level, under Section I (A) Coverages. (Policy, Table of Contents, ECF 9-2, at p. 1).

[8]   Despite carrying the burden with respect to application of any policy exclusion, Defendant offers no counterargument to Plaintiffs' argument that the plain language of the Exclusions Provision omits application to Additional Coverages.

      (1) Planning, zoning, development, surveying, siting;
      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      (3) Materials used in repair, construction, renovation or remodeling; or
      (4) Maintenance; of part or all of any property whether on or off the "residence premises".

      This **Exclusion f. applies only to Coverages A and B**.

(Policy, ECF 9-2, at Section I (C)(1)(f)) (emphasis added).

Again, by its plain, ordinary, and express language, this exclusion provision only applies to "Coverages A and B." Contrary to Defendant's contentions, this exclusion does not apply to the Additional Coverages, the coverage provision under which Plaintiffs seek coverage. Therefore, Plaintiffs' request for coverage is not barred by the Faulty Workmanship Exclusion.

In conclusion, for the reasons set forth above with respect to Count III of the complaint, Plaintiffs' motion for summary judgment is granted, consequently, Defendant's motion for summary judgment is denied. Accordingly, this Court finds and declares that Plaintiffs' insurance claim for coverage under the Ordinance Additional Coverage, Section I (A)(5)(k), is not precluded or limited by the $10,000 coverage limit under the Mold Additional Coverage, Section I (A)(5)(m), nor by the Mold Exclusion, Section I (C)(4)(j), and Faulty Workmanship Exclusion, Section I (C)(1)(f).

### *Count I – Breach of Contract*

At Count I, Plaintiffs assert a breach of contract claim premised on Defendant's denial of coverage for the costs associated with bringing the entire exterior wall in compliance with the Local Building Code. Defendant moves for summary judgment on this claim *solely* on the legal

arguments addressed in the above declaratory judgment analysis.[9]  Specifically, Defendant argues that it is entitled to summary judgment on this claim because Plaintiffs' claim for coverage is limited to the $10,000 limit provided in the Mold Additional Coverage and is otherwise excluded by the exclusions addressed above.  This Court has rejected these legal arguments.  Accordingly, Defendant's motion for summary judgment with respect to the breach of contract claim is denied.

### *Count II - Bad Faith*

At Count II, Plaintiffs assert a claim for bad faith premised on their contention that Defendant acted in bad faith when it refused to acknowledge or perform its obligation to provide Plaintiffs Additional Coverage to perform the remediation work in compliance with the Local Building Code. (*See* Compl., ECF 1-3, at ¶ 42).  Defendant moves for summary judgment on this claim on the basis that Plaintiffs have not presented the requisite clear and convincing evidence that Defendant acted in bad faith in handling Plaintiffs' claim.[10]  Notably, Plaintiffs provide no response to Defendant's challenge to the bad faith claim.

To establish a bad faith claim, a plaintiff must show with clear and convincing evidence that the insurer:  (1) lacked a reasonable basis for denying benefits under the policy; and (2) knew of, or recklessly disregarded, its lack of a reasonable basis for denying the plaintiff's insurance claim.  *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005).  "Clear and convincing evidence is evidence that is 'so clear, direct, weighty and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Burrell v. United Healthcare Ins. Co.*, 2001 WL 873221, at *1 (E.D. Pa. July 30, 2001)

---

[9]     As the non-movants, the Court construes all facts in a light most favorable to Plaintiffs, when analyzing Defendant's motion for summary judgment on Count I.

[10]     When considering Defendant's motion for summary judgment on Count II, all facts are construed in a light most favorable to Plaintiffs.

(quoting *U.S. Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306, 309 (3d Cir. 1985)). "A reasonable basis is all that is required to defeat a claim of bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (citing *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995)). A plaintiff must "ultimately show that the insurer breached its duty of good faith through some motive of self-interest or ill will." *Northwestern Mut.*, 430 F.3d at 137 (internal quotation and citation omitted). Here, Defendant based its denial of coverage on its interpretation of the Policy's $10,000 mold limit and exclusions. Plaintiffs, however, have not provided a response and, thus, have failed to show by clear and convincing evidence that Defendant's interpretation, though incorrect, was unreasonable.

Moreover, in not responding to Defendant's challenge to this claim, Plaintiffs also fail to meet their summary judgment burden with respect to this claim. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . [,] the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . [,] there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). "After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials' that show a

genuine issue of material fact or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute.'" *Davis v. City of Phila.*, 2015 WL 4404871, at *2 (E.D. Pa. July 20, 2015) (quoting Fed. R. Civ. P. 56(c)). By not advancing any argument or evidence of Defendant's actions beyond the Policy interpretation disagreement, Plaintiffs fail to meet their summary judgment burden. Accordingly, Defendant's motion for summary judgement as to bad faith is granted.

**CONCLUSION**

For the reasons set forth, Plaintiffs' motion for summary judgment as to Count III (declaratory judgment) is granted. Defendant's motion for summary judgment as to Count I (breach of contract) and Count III (declaratory judgment) is denied; and as to Count II (bad faith), is granted.

Two Orders consistent with this Memorandum Opinion follow.

*NITZA I. QUIÑONES ALEJANDRO*, J.